UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NEFIZA DZAFIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No. 4:18-cv-819-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL, [1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the

application of Plaintiff Nefiza Dzafic ("Plaintiff") for Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to

the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

Because I find the decision denying benefits was supported by substantial evidence, I will affirm

the Commissioner's denial of Plaintiff's application.

## I.   PROCEDURAL BACKGROUND

On November 28, 2014, Plaintiff applied for DIB, alleging that she had been unable to

work since July 21, 2014. (Tr. 158-59). Her application was initially denied. (Tr. 95-99). On May

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

19, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 102-03). On February 16, 2017, the ALJ held a hearing. (Tr. 34-77). On June 28, 2017, the ALJ issued an unfavorable decision. (Tr. 13-30). On August 20, 2017, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 154). On April 3, 2019, the Appeals Council declined to review the case. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.    FACTUAL BACKGROUND

On February 16, 2017, Plaintiff testified at a hearing before the ALJ. Plaintiff was born August 1, 1963, and she has an eighth-grade education. (Tr. 39). She moved to the United States from Bosnia in 1994. (Tr. 39). She has worked in the past in assembly line production, making lamps, but she was laid off. (Tr. 44). That job involved being on her feet all of the time and lifting up to 30 pounds. (Tr. 45). After that, Plaintiff worked at St. Anthony's, supplying, cleaning, and picking up medical equipment. (Tr. 45). That job also involved lifting 30 or more pounds. (Tr. 45-46). At the same time as that job, she had a second job cleaning offices. (Tr. 46-47). Plaintiff stopped cleaning offices because she could not do it anymore, but she continued working at St. Anthony's for a while. (Tr. 47-48). She eventually stopped working because she could not do the things she was asked to do, both because of her feet and because of emotional issues, concentration problems, and forgetfulness. (Tr. 48-50).

Plaintiff has panic attacks at night and cannot sleep; this makes her tired and sleepy the next day. (Tr. 51). She takes medications for panic attacks every day. (Tr. 60). It seems to help; she still has the attacks but only once or twice a month for three to five minutes at a time. (Tr. 60). She also experiences dizziness. (Tr. 51). Plaintiff has also had issues hearing voices, but medications have stopped those. (Tr. 53). She is not comfortable being around people. (Tr. 53).

She feels scared a lot. (Tr. 54). Plaintiff has problems with her feet, including numbness and burning pain; she has had treatment for those problems. (Tr. 55-57). She has to put ice on them three times for 20 minutes during the day. (Tr. 56). She could be on her feet standing and walking for maybe an hour or an hour and a half. (Tr. 56). Plaintiff also has back pain and leg pain if she sits too long. (Tr. 57). She has carpal tunnel syndrome and would not be able to lift a gallon of milk over and over because she would have problems with her hands. (Tr. 58-59). She wears a brace at night. (Tr. 59).

With regard to the medical records, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will cite to specific records as needed in the discussion below.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for

him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled;

if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since July 21, 2014,  the alleged onset date; that Plaintiff had the severe impairments of depression, generalized anxiety disorder, plantar fasciitis, and tibeal or Achilles tendonitis; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18-19). The ALJ found that Plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following additional limitations. The claimant can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. The claimant can never crawl. She can occasionally balance, stoop, kneel, and crouch. Bilaterally, the claimant can frequently handle, finger and feel. She must avoid vibration. She can perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements and with few if any work place changes. The claimant can occasionally interact with the public, co-workers, and supervisors.

(Tr. 21). At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a lamp wirer and central supply worker. (Tr. 25). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as housekeeper/cleaner (*Dictionary of Occupational Titles* ("*DOT*") No. 323.687-104), photo copy machine operator (*DOT* No. 207.685-014), and usher (*DOT* No. 344.677-014). (Tr. 25-26). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 21, 2014, through the date of his decision. (Tr. 26).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychiatrist, Dr. Farzana; and (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those

determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  The Opinion of Plaintiff's Treating Psychiatrist, Dr. Farzana

Plaintiff's first argument is that the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychiatrist, Dr. Farzana. On January 10, 2017, Dr. Farzana completed a mental RFC questionnaire for Plaintiff. (Tr. 467-71). Dr. Farzana stated that Plaintiff had major depressive disorder and post-traumatic stress disorder; that Plaintiff was taking Risperdal, Xanax, and Cymbalta; that Plaintiff had side effects of dizziness, drowsiness, fatigue, lethargy, and stomach upset; that Plaintiff was very depressed and anxious; and that Plaintiff's prognosis was guarded. (Tr. 467). On a checklist, Dr. Farzana noted that Plaintiff's signs and symptoms included anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; poverty of content of speech; generalized persistent anxiety; somatization unexplained by organic disturbance; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; psychomotor agitation or retardation; persistent disturbances of mood of affect; change in personality; apprehensive expectation; paranoid thinking or inappropriate suspiciousness; seclusiveness or autistic thinking; emotional withdrawal or isolation; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes; and persistent irrational fear of a specific object, activity, or situation which results in a compelling

desire to avoid the dreaded object, activity, or situation. (Tr. 468). Dr. Farzana opined that Plaintiff would be unable to meet competitive standards in any of the mental abilities and aptitudes needed to do unskilled or skilled work, including (but not limited to) the ability to remember work-like procedures; to understand, remember, and carry out very short and simple instructions; to maintain attention for a two-hour segment; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers; to adhere to basic standards of neatness and cleanliness; to travel in an unfamiliar place; and to maintain socially appropriate behavior. (Tr. 469-70). Dr. Farzana opined that Plaintiff would miss more than four days of work per month due to her impairments or treatment. (Tr. 471). Although she was asked to include medical and clinical findings supporting her assessment, she declined to do so. (Tr. 469-71).

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[2] Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c(a). Plaintiff filed her application in 2014, so the Court will use the version of the regulations that applies to claims filed before March 27, 2017.

the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). In weighing a treating source opinion, it is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's finding in that regard should not be disturbed so long as it falls within the "available zone of choice." *See, e.g.*, *Hacker v. Barnhart*, 459 F.3d 934, 936-38 (8th Cir. 2006).

In evaluating Dr. Farzana's opinion, the ALJ stated:

> The undersigned gives this opinion no weight. No examination revealed signs indicative of an inability to meet competitive standards in every work-related activity. For example, no examination revealed that the claimant could not maintain eye contact, that she was uncooperative, or that she was hyper-vigilant. Furthermore, nothing in the claimant's treatment notes indicate signs indicative of the limitations Dr. Farzana assessed. In fact, most of the time nothing abnormal was observed at all in the treatment notes (Exhibits 5F, 12F). The claimant did not require treatment indicative of the limitations, such as frequent counseling or psychiatric appointments, inpatient hospitalization, or intensive outpatient treatment. Finally, the claimant performed activities such as shopping in stores, doing laundry, and traveling to Canada and Florida with her new husband, all of which are inconsistent with the extreme limitations Dr. Farzana assessed. For these reasons, the undersigned gives Dr. Farzana's opinion little weight.

(Tr. 24). Elsewhere in his decision, the ALJ also noted that Plaintiff's "appointments with her psychiatrist consisted mostly of [Plaintiff] reporting how she stayed home, did not feel well, and occasionally heard voices, but the examiner observed no significant clinical signs." (Tr. 24).

After careful review of the record, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Farzana's opinion, and that his assessment

of that opinion falls within the available zone of choice. At the outset, the Court notes that although the ALJ gave "little weight" or "no weight" to Dr. Farzana's opinion, the ALJ did include very significant mental limitations in the RFC: he limited Plaintiff to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements and with few, if any, work place changes, and he limited Plaintiff to only occasional interaction with the public, co-workers, and supervisors. (Tr. 21). These limitations partially account for Dr. Farzana's opinion that Plaintiff has difficulties with concentrating, dealing with stress, understanding and carrying out detailed instructions, and interacting appropriately with other people.

The ALJ reasonably found, however, that the extreme limitations in every area of mental functioning found in Dr. Farzana's opinion were not supported by examination findings in Dr. Farzana's own treatment notes or elsewhere in the record. Dr. Farzana's treatment notes contain few objective findings or observations that would support the opinions offered, and they show generally intermittent complaints of significant mental symptoms and improvement with medication. Plaintiff began treatment with Dr. Farzana in April 2014 (three months before Plaintiff's alleged disability onset date), and at that time Dr. Farzana noted that Plaintiff's attitude was sullen, her psychomotor state was agitated and restless; her mood was depressed, anxious, sad, and low; her affect was flat and blunted; her thought process was circumstantial; her thought content showed low self-worth, hopelessness, and flashbacks; her cognition showed impaired concentration; her insight was "fair, limited"; and her Global Assessment of Functioning score was 50, indicating serious symptoms.[3] (Tr. 361-63). Dr. Farzana started Plaintiff on mirtazapine.

---

[3] A Global Assessment of Functioning ("GAF") score is based on a "clinician's judgment of the individual's overall level of functioning." *Hudson v. Barnhart*, 345 F.3d 661, 662 n.3 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment

(Tr. 361). At subsequent visits, Dr. Farzana did not conduct mental status examinations and did not record any objective signs, instead merely noting Plaintiff's descriptions of how she was feeling. At some visits, Plaintiff reported not feeling well, having nightmares, feeling tired, feeling depressed, feeling sad, feeling hopeless, feeling isolated, feeling preoccupied, having difficulty concentrating, and/or feeling overwhelmed. (Tr. 352, 355, 357, 359, 360, 430, 440, 452, 455, 458). At a few visits, she complained of hearing voices or seeing faces (Tr. 430, 438, 449); however, Plaintiff testified that this problem stopped with medication. (Tr. 53). At one visit in November 2015, Plaintiff complained of panic attacks and was prescribed Xanax (Tr. 353); thereafter, however, treatment notes contain no discussion of panic attacks. At some visits, no mental symptoms or mental problems were noted at all. (Tr. 354, 356, 432, 435, 443). In July 2016, Plaintiff reported that she had visited Canada with her husband, and Dr. Farzana noted that "she seemed generally satisfied and is taking the meds regularly." (Tr. 435). In October 2016, Dr. Farzana noted that Plaintiff was "doing alright on the current meds" and was planning a trip to Florida. (Tr. 432).

Although these notes are certainly consistent with a finding that Plaintiff had some significant mental symptoms, the ALJ reasonably found that they did not support the very severe limitations in all areas of functioning contained in Dr. Farzana's opinions. In discounting those opinions, the ALJ reasonably considered several relevant factors.

First, the ALJ reasonably considered the fact that aside from Dr. Farzana's very first treatment note, Dr. Farzana's findings contained very few objective findings or observations to

---

in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *DSM-IV-TR* 34.

support his opinions. (Tr. 24). "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016). *See also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Second, the ALJ reasonably considered that Dr. Farzana's notes indicated that Plaintiff's impairments improved significantly with medication. A condition that is "controllable and amenable to treatment [ ] 'do[es] not support a finding of disability.'" *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009)). *See also Andrews v. Colvin*, 791 F.3d 923, 928-29 (8th Cir. 2015) (holding that the ALJ properly gave little weight to a treating physician's opinion that was inconsistent with treatment notes indicating that the claimant's pain was adequately controlled with medication).

Third, the ALJ reasonably considered the fact that, despite Plaintiff's supposed inability to function in nearly all areas, there is no indication that it was recommended that Plaintiff undergo psychological therapy, intensive outpatient treatment, inpatient hospitalization, or other intensive treatment measures. (Tr. 24). Instead, she merely saw her psychiatrist every one to three months and took medications. It was reasonable for the ALJ to find that Plaintiff's conservative course of treatment is at odds with the extreme limitations in Dr. Farzana's opinion. *See Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (ALJ properly considered a treating physician's "routine, conservative medical treatment" in discounting treating physician's opinions); *Perkins v. Astrue,* 648 F.3d 892, 898-99 (8th Cir. 2011) (holding that an ALJ properly discounted a treating physician's opinion where, among other flaws, the treating physician's opinion was inconsistent with the conservative nature of the treatment rendered).

Fourth, the ALJ also reasonably found that Plaintiff's accounts of her daily activities, which included shopping in stores (Tr. 194), helping to supervise her daughter's young twins (Tr. 356, 367, 443), and traveling to Florida and Canada with her husband (Tr. 41-43, 432), were to some extent inconsistent with Dr. Farzana's opinion that she was almost completely incapable of things such as being aware of normal hazards and taking appropriate precautions, maintaining socially appropriate behavior, interacting with the public, and traveling to unfamiliar places. (Tr. 24). *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (finding that the plaintiff's "self-reported activities of daily living provided additional reasons for the ALJ to discredit [the treating doctor's] pessimistic views of her abilities"); *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (ALJ reasonably stated he discounted physician's opinion because the opinion was "more restrictive than self-reported activities").

Fifth, the ALJ reasonably considered other findings in the record that were inconsistent with Dr. Farzana's opinion. (Tr. 24). For example, although Dr. Farzana found Plaintiff would be unable to adhere to basic standards of neatness and cleanliness (Tr. 470), other treatment providers and examiners found her to be "well-groomed" (Tr. 382) and "dressed neatly" (Tr. 366), and Plaintiff reported to the consultative examiner that she completes her daily hygiene with no assistance and no reminders from anyone. (Tr. 367).

Sixth, the ALJ also considered the fact that Dr. Farzana's opinion was inconsistent with the other medical opinion evidence in the record, giving "some weight" to the opinion of the state agency non-examining psychological consultant, who determined that Plaintiff had no more than moderate limitations in the ability to perform work-related activities. (Tr. 24, 84).

In sum, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting the opinion of Dr. Farzana. Although the ALJ did not explicitly discuss all of the

factors listed in § 404.1527(c) in evaluating Dr. Farzana's opinion, he was not required to do so. *See Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform a factor-by-factor analysis of the 20 C.F.R. § 404.1527(c) factors was not erroneous where the ALJ "stated that he had considered those factors and explained his rationale in a manner that allows the [court] to follow his line of reasoning, including stating the amount of weight given to this evidence"); *Derda v. Astrue*, No. 4:09-CV-01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527[c], he need not explicitly address each of the factors"). The ALJ cited 20 C.F.R. § 404.1527 and discussed several of the factors in his decision, including the consistency of Dr. Farzana's opinion with Dr. Farzana's own treatment notes and other evidence. (Tr. 21-24). The ALJ also "explained his rationale in a manner that allows the [Court] to follow his line of reasoning" *Nishke*, 878 F.Supp.2d at 984. No more was required to comply with the relevant regulations.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion with regard to Dr. Farzana's opinions. However, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom*, 680 F.3d at 1065 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). It is not the role of this Court to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### C. The ALJ's Evaluation of Plaintiff's Subjective Complaints of Pain

Plaintiff's second argument is that the ALJ failed to properly evaluate Plaintiff's complaints of pain in her feet and back. In evaluating the intensity, persistence, and limiting effects

of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[4] In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; the precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 404.1529(c)(3) (same).

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges

---

[4] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 404.1529.

and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that his assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's complaints of pain in her feet and back. The ALJ acknowledged Plaintiff's testimony that she had back pain and that she had issues with her feet that affect her ability to stand and walk. (Tr. 18, 22). He limited her to light work and to only occasional balancing, stooping, kneeling, and crouching, and he found that she could never climb ladders, ropes, or scaffolds and must avoid vibrations. (Tr. 21). To the extent that the ALJ did not find all of Plaintiff's claimed symptoms to create limitations that should be included in the RFC, the ALJ did so only after conducting an appropriate analysis of the record and the relevant factors and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record. (Tr. 22-24).

First, the ALJ reasonably found Plaintiff's reported daily activities somewhat inconsistent with her complaints of disabling pain. (Tr. 22). The record indicates that Plaintiff was capable of driving (Tr. 194), doing light cleaning and laundry with encouragement (Tr. 193), shopping in stores (Tr. 194), helping to supervise her daughter's young twins (Tr. 356, 367, 443); and traveling to Florida and Canada with her husband. (Tr. 41-43, 432). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of disabling pain and may be considered alongside other factors in judging the assessing the severity of her subjective complaints of pain.

*See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing a claimant's credibility, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

Second, the ALJ reasonably considered that Plaintiff did not frequently and regularly seek treatment for her pain symptoms. (Tr. 18-19, 23). With respect to Plaintiff's back pain, Plaintiff sought very minimal treatment during the relevant time frame. Medical records dated in the year before the July 2014 alleged disability onset date show that Plaintiff had back and leg pain and went to physical therapy for it, which led to significant improvements. (Tr. 255-56, 269, 304, 313, 320, 324). A month before her alleged onset date, she reported that her back pain was improved, and her lumbar physical examination was benign. (Tr. 244). After the alleged onset date, there is almost no evidence that Plaintiff sought treatment for back pain or that she had significant back pain issues, aside from a December 2014 appointment at which she presented "for follow up on

many issues including . . . backache." (Tr. 241). Plaintiff identifies no other medical records to suggest that Plaintiff had significant back pain during the relevant time period.

With regard to Plaintiff's foot pain, the ALJ also considered the fact that Plaintiff only infrequently sought treatment. (Tr. 23). On June 9, 2014, Plaintiff complained to her primary care provider of pain in her ankles and feet. (Tr. 244). She was diagnosed with tarsal tunnel syndrome, prescribed Piroxicam, and referred to a podiatrist, Dr. DeSaix. (Tr. 244-45). On June 25, 2014, Plaintiff saw Dr. DeSaix, who noted that Plaintiff complained of pain in her fourth toes and bunions that had been present for two years, as well as numbness in the balls of the feet. (Tr. 254). Dr. DeSaix diagnosed bilateral neuroma and HAV with bunion, and she advised Plaintiff to wear supportive, wide shoe gear at all time; to decrease weight bearing; to apply ice; and to continue taking Piroxicam; she also ordered orthotics. (Tr. 254). A month later, on July 30, 2014, Plaintiff returned to Dr. DeSaix, reporting that she had been following Dr. DeSaix's recommendations and her pain was improved 50%. Dr. DeSaix dispensed orthotics, continued her prior recommendations, and advised Plaintiff to return in four weeks for follow-up. (Tr. 374). Plaintiff did not seek treatment for foot pain until ten months later, on May 27, 2015, when she complained to her primary care physician of pain in her left foot; her doctor noted that she had "failed to follow up with podiatry after [being] seen last year." (Tr. 382). Her doctor diagnosed left foot pain, continued Piroxicam, and again referred Plaintiff to a podiatrist. (Tr. 382-83). On June 29, 2015, Plaintiff returned to Dr. DeSaix, complaining of pain in the heels and shooting pain into the forefoot, present for several months. (Tr. 373). She stated that she had not been icing, wearing supportive shoes at all times while ambulating, or wearing her orthotics. (Tr. 373). Dr. DeSaix diagnosed plantar fasciitis and posterior tibial and achilles tendinitis; again advised wearing supportive shoe gear at all times while ambulating, recommended Plaintiff decrease

weightbearing, recommended application of ice, recommended wearing orthotics, applied a supportive strapping, and prescribed naproxen. (Tr. 373). On July 20, 2015, Plaintiff returned to Dr. DeSaix, reporting that she had been wearing orthotics but not following the other recommendations; she stated the pain in the top of her foot was 30% better and that she no longer had any pain in the heels. (Tr. 372). Thereafter, it does not appear that she sought treatment for foot pain, though she did mention foot pain to her psychiatrist at visits in January and April of 2016. (Tr. 438, 440). It was proper for the ALJ to consider the sporadic nature of Plaintiff's treatment in assessing her subjective complaints. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is . . . a basis for discounting a claimant's subjective complaints.").

Third, the ALJ reasonably considered the evidence that Plaintiff was not fully compliant with treatment recommendations related to her pain. (Tr. 23). As discussed above, Plaintiff often did not follow her podiatrist's recommendations with regard to icing, wearing supportive shoes, taking medications, and attending follow-up visits. This was a proper consideration in assessing her subjective complaints. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (ALJ properly considered the plaintiff's "resistance to some suggested courses of treatment" in assessing her subjective symptoms); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.");

Fourth, the ALJ considered the evidence that Plaintiff's impairments improved with treatment. (Tr. 23). On the two occasions when Plaintiff reported following even some of her podiatrists' recommendations, she reported significant improvement at follow-up visits. (Tr. 372, 374). "If an impairment can be controlled by treatment or medication, it cannot be considered

disabling." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (internal quotations and citation omitted).

Fifth, the ALJ reasonably considered that Plaintiff's treatment providers recommended only conservative treatment (orthotics, recommendations of supportive shoe gear, medications, and recommendations of icing) for her pain. (Tr. 23). *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that ALJ properly considered claimant's relatively conservative treatment history when evaluating credibility).

Sixth, the ALJ reasonably considered that none of Plaintiff's physicians offered an opinion as to her physical functional limitations. (Tr. 23). *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (noting that the fact that no doctor had placed limitations on the claimant was a proper consideration in the ALJ's analysis of the claimant's subjective complaints).

Seventh, the ALJ acknowledged that Plaintiff's good work history tended to support her allegations, though he found that the other evidence precluded a finding that Plaintiff's limitations were as severe as she alleged. (Tr. 22).

In sum, the Court finds that the ALJ conducted a proper evaluation of Plaintiff's claimed symptoms, considered several of the relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The Court must defer to the ALJ's evaluation of Plaintiff's subjective symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI.   CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate judgment will accompany this Memorandum Opinion.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of September, 2019.